Statement of the Case.
MONROE, J.
Defendant appeals 'from a verdict and judgment for $6,000, awarded plaintiff as damages for injuries sustained by her, in consequence, as she alleges, of the negligence of a motorman or conductor, in prematurely starting a car from which she was about to alight and thereby throwing her upon the paved street.
It appears from the evidence that, on the evening of August 30, 1910, plaintiff boarded a summer car at Milam and Marshall streets, in Shreveport, with a view of paying a visit to her brother, Mr. Ward, who lives on Creswell street, near the corner of Egan, and that she seated herself at the end, on the right side, of one of the cross-seats, about midway of the car. The line runs on Marshall street to Stoner avenue, thence, on Stoner avenue, to Greswell street, into which it turns, to the left, and the first street crossing Creswell street, after leaving Stoner avenue, is Egan street. Plaintiff therefore rang the bell at, or just after, the turn into Creswell street, and the car stopped at or about the usual place, on the far side, or a little short of the far side, of Egan street. Plaintiff’s theory of the case is that, when the ear stopped, she arose, seized the grab handle with her right hand, placed her left foot down on the step (which extends along the side of the car), and placed her right foot down on the paved street, and that, just then, she still holding the handle, the car started and threw her down.
Mr. Hodge, a witness called by plaintiff, testifies that he was seated on the next to' last seat, two or three seats behind plaintiff; that plaintiff was seated, as she says, at the right end of one of the seats; that on the left there was a rail, or bar, extending along the side of the car, to keep passengers from getting off on that side; that, the car stopped, and his attention was attracted to a man who got off on that side, crawling under the rail; that, about the same moment, he saw plaintiff in the act of alighting, when the car was started, and she was thrown down; that the car was stopped within about the width of two seats; and that the conductor and some one else assisted plaintiff to get up and accompanied her to the sidewalk. He was interrogated and replied as follows:
“Q. You heard the conductor make inquiry if she was hurt? A. Yes, sir. Q. What did she tell him? A. I do not remember any answer from her. He spoke rather loud. I heard the question.”
The witness repeats, several times, that he saw the man getting out under the rail, on the left side,- and plaintiff alighting, on the right side, at about the same time; his attention having been first attracted to the man getting under the rail. The fact is established, however, that the line in question was single, and that there was no rail and no occasion for one.
A young lady, about 15 years of age, who lives near plaintiff and has known her a long time, got on the car at the starting point and was seated, with a little nephew, some 3 years old, on the front seat, though upon which side of the car does not appear. She did not see plaintiff when the latter boarded the car, at the corner of Milam street, and her attention was first attracted to her when the car stopped at Egan street. *1055 She turned around, “just because the car •stopped, * * * to see who was getting off,” and she says that she saw plaintiff standing on the step, “with one foot reaching to put on the ground,” and that the conductor, at that moment, rang the bell, and the car started and threw her down.
It is shown that the conductor died a month or six weeks after the accident.
O. M. Jackson, who was the motorman, testifies that he was signaled to stop at Egan street, and did so; that he waited for a signal to start, and, not receiving it, sounded his gong; that, the signal being still delayed, he looked around and saw the conductor picking the lady up and talking to her; that he heard her say “that she was not hurt, to go ahead”; that he made but the one stop.
J. L. Hartfield testifies: That he was seated on the same seat with plaintiff; there being one person between them, and the seat being near the middle of the car. That she had touched the button, to get off, and:
“Just as the car came to a stop, she stepped ■off and-fell, and the conductor stepped off and assisted her, asked if she was hurt, and she said, ‘No; only stunned from the fall.’ She says: T caught my shoe in my skirt was the cause ■of my falling. I do not blame any one for being hurt.’ He asked her if she wanted to go home, or to town, and she said, ‘No,’ and he assisted her to the sidewalk and came on back and got on the car. I saw her walk a few steps, and, after getting up a piece, I looked back and saw her sitting on the side of the banquet. That was the last I saw of her.”
O. G. Goff, who was seated in the front part of the car, testifies that the ear was stopped, or was stopping, and he looked back and saw the lady on the sidewalk and heard her say “she did not blame any one for the accident except herself.”
J. M. Brumlow and his wife were seated three or four seats in front of plaintiff. He says:
“The first thing that attracted my attention, I heard some one hit the street, or something hit, pretty hard, and I looked around, and an old lady was lying four or five feet from the ■car, and I judge the car passed her about half the car length, pretty near the length, before it stopped, and the motorman or conductor was first to her, and some four or five assisted. * * * Q. What did she say? A. I did not hear her say — I do not think I heard her say— but one or two words. Said she did not blame any one except herself, as he helped her up. That was the only remark made. The conductor was talking to her. That was about the only remark.”
Finding that she was more seriously hurt than she at first thought, plaintiff concluded to return, at once, to her home, and in a very little while she was assisted in getting on a returning car by her brother and by Mr. Flournoy, the sheriff, who happened to be in the car, and who, her husband being one of his deputies, appears to have been acquainted with her and was called as a witness in her behalf. He was interrogated concerning what took place in the car and answered, as follows:
“Q. Were you close enough to have any conversation with her? A. I do not know whether I had a conversation with her. I asked her how the accident happened, when she first took her seat. Q. Mr. Flournoy, during the trip down on the car, did you hear Mrs. Otts say she did not blame the conductor for the injury, for the fall? A. I do not remember; she never said that to me. Q. She never said that in your hearing? A. No, sir; I did not hear her say that. She may have said it. Q. Did you hear any such remark? A. No, sir; I did not hear anything of the sort. I assisted her on the car, with her brother, to a seat. I do not know where I took my seat I asked her, when she sat down, how it occurred, and she said that it occurred on the other car, when she was getting off. That is about all I know. Q. You never heard her make any such remark? A. No, sir.”
Kahn Lazar, who was a passenger on the same car, says in his testimony:
“When she got on the car, she was greatly excited, and she seemed to be in pain and was talking to several parties, and I remember asking, as a question, how she was hurt. Q. What did she say? A. As near as I can recollect, she said that she had fallen off the car, and some one asked her whose fault it was, and I could not catch every word that was said. Finally, I remember she said she did not blame the conductor.”
Plaintiff, herself, was interrogated upon the subject last above referred to, when she *1057 was first examined, and answered that, if she stated that she had fallen off the car, but that it was not the fault of the traction company, she did not remember it. When she took the stand, in rebuttal, she was a little more positive; her answers being:
“I did not speak to a soul except Mr. Flournoy, the sheriff. He was sitting on a seat, and he asked me how the accident happened, fie is the only one I made any statement to. Q. Did you make the statement that you did not blame the conductor? A. I did not; positively, I did not. If I did, 1 am not conscious of anything of the kind.”
She denies positively that she said that she stepped on her dress and says that she had on a short, walking skirt.
Opinion.
Plaintiff relies for corroboration .of her story of the accident, upon the testimony of her young friend who was seated on the front seat, whose attention was attracted only by the stopping of the ear, and who says that, looking around, after the car stopped, she saw plaintiff, with one foot on the car step, putting the other to the ground, and that the car gave a sudden start at that moment; and, upon the testimony of Mr. Hodge, to about the same effect. They and the plaintiff are the only witnesses who testify to any sudden starting of the car. The young lady was not very well situated to see exactly where plaintiff’s feet were, or to determine, with precision, the cause of her fall, and we think was mistaken in her conclusions. Mr. Hodge, in testifying, positively and repeatedly, that his attention was attracted to a man who got off under a rail on the left side of the car, demonstrated the fallibility of his observations, since it is shown, beyond question, that there was no such rail, and one witness, at least, testifies that no passenger got off at that corner save plaintiff. It is somewhat of a coincidence, too, that whilst plaintiff’s witnesses admit that she was asked whether she was hurt,'and how the accident happened, they did not hear, or were unable to remember, what she said in reply. Mr. Hodge heard the question of the conductor, but did not hear the reply, though several witnesses, who appeared to be no nearer than he, did hear it; and though Mr. Flournoy, himself, asked how the accident happened, he seems to have obtained no other information than that it occurred on the other car, which was not much to the point.
Plaintiff, in order to recover, is bound to make it reasonably certain that her injury was caused by the negligence of defendant or its servants, and she has failed to do so. She has produced two witnesses who testify to facts which would authorize such a conclusion. But defendant has produced five witnesses, four of whom were third persons, having, apparently, no interest — the fifth being the motorman, to whom no blame would have attached, in any event — and they testify to facts which place the blame on the plaintiff herself. We are therefore of opinion that there should be judgment in favor of defendant.
It is, accordingly, ordered, adjudged, and decreed that the verdict and judgment appealed from be avoided and reversed, and that there now be judgment in favor of defendant, rejecting plaintiff’s demand and dismissing this suit at her cost in both courts.